UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                v.

MORALLES MENDEZ,

                Defendant.

**DECISION AND ORDER**

1:19-CR-00245 EAW

---

## I.   <u>INTRODUCTION</u>

Pending before the Court is the Government's motion to revoke the release order of the magistrate judge.  (Dkt. 32).  For the reasons set forth below, the Government's motion is granted and Defendant's application to be released on conditions is denied.

## II.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Defendant Moralles Mendez ("Defendant") is charged by way of an Indictment returned on December 12, 2019, with three separate counts:  (1) distribution of fentanyl and heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C); (2) distribution of acetyl fentanyl, fentanyl, and heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and (b)(1)(B); and (3) possession with intent to distribute fentanyl and heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  (Dkt. 1).  The Indictment alleges that Defendant was previously convicted of a serious drug felony (*id.* at 3), thus increasing the statutory potential penalties.

Defendant's prior criminal history is significant, and as noted in the Pretrial Services Report prepared by the United States Probation Office ("USPO"), he has six prior felony

convictions and numerous instances where his parole or supervised release was revoked.[1] (Dkt. 41 at 4-8).  Defendant's criminal history tells the story of a serial drug trafficker unable or unwilling to comply with court orders and conditions of parole supervision:

- On February 26, 1999, Defendant pleaded guilty to a Class D felony drug crime, and he was sentenced to probation of five years; less than one year later, on January 21, 2000, Defendant's probation was revoked because of a new criminal conviction;

- On January 21, 2000, Defendant pleaded guilty to a Class D felony drug crime and he was sentenced to 30 months incarceration to be followed by five years parole; on October 20, 2004, his parole was revoked;

- On June 18, 2002, Defendant pleaded guilty to a Class A misdemeanor drug crime and he was sentenced to nine months incarceration;

- On March 15, 2004, Defendant pleaded guilty to a Class B felony drug crime and he was sentenced to probation for life; Defendant's probation was revoked on February 15, 2007;

- On October 30, 2006, Defendant pleaded guilty to a Class D felony drug crime and he was sentenced to two years incarceration and 18 months supervision;

---

[1]     The Pretrial Services Report noted that Defendant was arrested using a different name on at least four prior occasions.  (Dkt. 41 at 4-6).  At the hearing on June 5, 2020, Defendant denied using different names, and instead contended that "Fernando Mendez III" is an abbreviation of his formal name.  Because of this factual discrepancy, the Court does not rely on Defendant's arrest under an assumed name as a basis for its decision.

- On May 31, 2013, Defendant pleaded guilty to a Class D felony drug crime and he was sentenced to four months incarceration and five years probation; the probation was revoked in May 2016, and Defendant was resentenced to five months incarceration; and

- On June 25, 2018, Defendant pleaded guilty to a Class C felony drug crime and he was sentenced to five years probation; less than one year later, on March 29, 2019, his probation was revoked as a result of a domestic incident with his girlfriend involving alleged violent behavior by Defendant, and he was sentenced to six months incarceration (a temporary order of protection was also imposed).

(*Id*.).  Defendant was under post-release supervision when he was arrested for the instant offense.  (*Id*.; *see* Dkt. 38 at 7).

After his arrest on the underlying criminal complaint on or about September 26, 2019, the Government moved for detention and a detention hearing was held before United States Magistrate Judge Jeremiah J. McCarthy on October 1, 2019.  (Dkt. 2; Dkt. 4).  Judge McCarthy concluded that no condition or combination of conditions would protect against the risk of flight and danger presented by Defendant's release, and therefore ordered Defendant detained pending trial.  (Dkt. 6).

On April 29, 2020, Defendant filed a motion to be released from custody, arguing that a change in circumstances existed because Defendant's father was now willing to have Defendant reside with him if released from custody, at his home in Niagara Falls, New

York.  (Dkt. 20 at ¶¶ 7-8).  Defendant also contended that the COVID-19 pandemic[2]

justifies his release due to a pre-existing medical condition of sickle cell anemia.  (*Id*. at

¶¶ 11-12).

The Government opposed Defendant's motion (Dkt. 24), and on May 6, 2020, an

appearance was held before Judge McCarthy (Dkt. 26).  In support of his argument that

circumstances had changed, Defendant's counsel explained:

> [W]e have now and that represents a change of circumstances is we
> have an address, a viable address.
> I believe the only address we had before was the address of
> [Defendant's girlfriend] Ms. Vacanti.  And I believe that was deemed
> unsuitable.
> And we have the address of a family member, and not just any family
> member either, but Mr. Mendez's father, Mr. Moralles Mendez, Senior.
> And, Your Honor, he is, you know, willing to allow his son to come in and
> live in his home.  And he's a working man.  He has a family and he is a
> responsible citizen and it is within this district.

(Dkt. 38 at 3).  At that appearance both the Government and the USPO expressed their

objections to Defendant's release.  (*Id*. at 5-7).  Judge McCarthy concluded that changed

circumstances existed with the availability of a different residence (*id*. at 7), but due to

concerns about the risk of flight and danger, he would require Defendant's father to post

security of $5,000 and a signature bond of $10,000 (*id*. at 8, 10).  Judge McCarthy also

---

[2]    On March 13, 2020, the President declared a National Emergency concerning
COVID-19.  Proclamation No. 9994, 85 Fed. Reg. 15337 (Mar. 13, 2020).  According to
the World Health Organization's website, as of June 16, 2020, there were 7,941,791
confirmed cases of COVID-19 worldwide, with 434,796 confirmed deaths.  *See* WHO
Coronavirus Disease (COVID-19) Dashboard, World Health Org., https://covid19.who.int/
(last visited June 16, 2020).

indicated that Defendant would be subjected to home incarceration with electronic monitoring at his father's home. (*Id*. at 8).

A subsequent appearance was held before Judge McCarthy on May 26, 2020, wherein Defendant's counsel indicated that Defendant's father "upon advice of counsel [is] not [willing] to participate in any ongoing federal criminal proceedings until after disposition of all criminal charges." (Dkt. 44 at 3). At that appearance, Defendant's brother appeared by telephone and indicated that he would be willing to post the necessary security. (*Id*. at 4-5). The matter was adjourned to May 28, 2020, to clarify whether Defendant's father was unwilling to have Defendant reside with him. (*Id*. at 8, 10).

On May 28, 2020, Defendant's counsel confirmed that he had been unable to reach Defendant's father to discuss the matter further. (Dkt. 39 at 3). However, Defendant's counsel proposed an alternative address—the grandmother of some of Defendant's children. (*Id*. at 3-4). The matter was adjourned to the following day, when the grandmother of some of Defendant's children appeared by telephone and indicated that she would be willing to have Defendant reside with her, and Defendant's brother also appeared and reconfirmed his willingness to post the security. (*Id*. at 11-12; Dkt. 40 at 4). Due to concerns raised by the USPO about Defendant possibly having to be placed on the lease at the residence, Defendant's counsel was instructed to provide satisfactory information to the USPO on that issue. (Dkt. 40 at 7).

At the conclusion of that hearing, Judge McCarthy noted that Defendant's criminal history did not involve acts of violence and that his assessment was that the security posted by Defendant's brother would reasonably protect against Defendant's risks of

noncompliance with conditions of release.  (*Id*. at 14).  Judge McCarthy also issued a written Decision and Order, explaining that the COVID-19 pandemic, the availability of a new residence, and the willingness of Defendant's brother to post security constituted good cause to reopen the detention hearing.  (Dkt. 45 at 2). Judge McCarthy noted Defendant's strong ties to this District and his three young children who reside in the area, and while recognizing Defendant's criminal history, concluded that the conditions of release "sufficiently mitigate[] defendant's danger to the community and the potential for his flight."  (*Id*. at 3).  Judge McCarthy explained that "one of the most significant factors is the willingness of defendant's brother . . . to post [security]," and he "cautioned defendant that he would be placing his brother at serious financial risk if he failed to abide by the conditions of his release."  (*Id*.).

In the Government's motion to revoke Judge McCarthy's release order, it argues that Defendant is both a flight risk and a danger; that he likely faces a Sentencing Guidelines imprisonment range of 210 to 262 months if convicted of the crimes charged in the Indictment (Dkt. 33 at 8); that the evidence against Defendant is strong as it involves Defendant's recorded sales of heroin and fentanyl to an undercover Drug Enforcement Administration ("DEA") agent and Defendant's alleged confession upon his arrest (*id*. at 7, 9-10); and that all the factors set forth at 18 U.S.C. § 3142(g) warrant in favor of detention (*id*. at 7-17).

Defendant filed a response in opposition to the Government's motion.  (Dkt. 46). The Court held oral argument on the matter on June 5, 2020, and reserved decision.  (Dkt. 50).

- 6 -

III.    **STANDARD AND ANALYSIS**

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, authorizes and sets forth the procedures for the release or detention of a person pending trial, sentence, and appeal. The procedures and standards for release or detention of a person such as Defendant pending trial are set forth at 18 U.S.C. § 3142.  *See United States v. Vasquez*, 113 F.3d 383, 388 (2d Cir. 1997).  A defendant awaiting trial must be released unless the release will present a risk of flight or dangerousness, or both, and no set of conditions can reasonably eliminate those risks.  *See* 18 U.S.C. § 3142.

Although there is "only a limited group of offenders who should be denied bail pending trial," *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (citations and quotations omitted), when there is "a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate," *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985) (citation omitted).

Because Defendant has been indicted for crimes in violation of the Controlled Substances Act, 21 U.S.C. 801 *et seq.*, for which the maximum term of imprisonment is ten years or more, there is a rebuttable presumption pursuant to 18 U.S.C. § 3142(e)(3)(A) that no condition or combination of conditions will reasonably assure the appearance of Defendant and the safety of the community if Defendant is released.  *See United States v. Contreras*, 776 F.2d 51, 54-55 (2d Cir. 1985) (holding that a grand jury indictment establishes probable cause for purposes of the rebuttable presumption under the Bail Reform Act, and when faced with an indictment, the Court does not need to make an

independent finding of probable cause).  The presumption shifts to Defendant "a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "[A] defendant must introduce some evidence contrary to the presumed fact[s] in order to rebut the presumption." *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).  If a defendant satisfies this burden of production and rebuts the presumption, it does not disappear; rather, the presumption "remains a factor to be considered among those weighed by the district court." *Mercedes*, 254 F.3d at 436.

Even in a presumption case, at all times the government retains the ultimate burden of persuasion.  *Id*.  The burden of proof with respect to risk of flight is preponderance of the evidence.  *Id*.  On the other hand, the government must demonstrate by clear and convincing evidence that a defendant should not be released due to his risk of danger. *Chimurenga*, 760 F.2d at 405.  Clear and convincing evidence "means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *Id.* (quoting *Addington v. Texas*, 441 U.S. 418, 431 (1979)).  In other words, the evidence must support a conclusion of danger to the community "with a high degree of certainty." *Id.*

The statutory factors that a court must consider in deciding whether a defendant has rebutted the presumption of flight and danger, and whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, are as follows:

(1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves . . . a controlled substance, firearm, explosive, or destructive device;

(2)   the weight of the evidence against the person;

(3)   the history and characteristics of the person, including—

(A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see also Mercedes*, 254 F.3d at 436 ("To determine whether the presumptions of dangerousness and flight are rebutted, the district court considers . . . [the factors set forth in] § 3142(g).").

In reviewing a detention order of a magistrate judge, a district judge should not simply defer to the judgment of the magistrate judge, but rather must reach her own independent conclusions. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). "When making its *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001), *aff'd*, 21 F. App'x 66 (2d Cir. 2001).

A.   **Nature and Circumstances of Charged Offense**

Defendant is charged with distributing fentanyl, heroin, and acetyl fentanyl—lethal narcotics that are destroying communities and causing overdose deaths. Although not in and of themselves a crime of violence, the harm being caused by the distribution of these

drugs can be more dangerous than some crimes that are categorized as crimes of violence. The potential period of incarceration Defendant faces if convicted under the Sentencing Guidelines reflects the seriousness of these charged offenses—210 to 262 months. Consideration of this factor thus weighs in favor of detention.

### B.   Weight of the Evidence

In assessing the weight of the evidence against Defendant, it is important to note that Defendant is presumed innocent, and "it is not the Court's role at this stage of the proceedings to assess [a defendant's] guilt or innocence." *United States v. Enix*, 209 F. Supp. 3d 557, 573 (W.D.N.Y. 2016). This factor "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community," *United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008) (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)), and therefore it is generally considered the least important of the § 3142(g) factors.

Nonetheless, this factor weighs strongly in favor of detention. The evidence proffered by the Government demonstrates that Defendant sold narcotics to undercover DEA agents, the sales were recorded, and Defendant confessed to the crimes. In fact, according to the Government, Defendant admitted to using a particular supplier for 6-7 years for his heroin trade. (Dkt. 33 at 9).

### C.   Defendant's History and Characteristics

The Court appreciates that, as Judge McCarthy noted, Defendant has strong ties to the area, including his three young children. However, Defendant's horrible track record of six felony convictions for drug trafficking and repeated violations of parole and

supervised release diminishes the significance of Defendant's ties to the area and his family.   Consideration of Defendant's criminal history weighs heavily in favor of detention.

The Court understands that Defendant's brother is willing to put up security for his release, and that willingness says a lot about Defendant's brother—but it says nothing about Defendant.  He has demonstrated repeatedly that threats of future incarceration do not deter his continued violations of parole conditions, and the Court has no reason to believe that his brother's financial jeopardy would somehow change that calculus.  Indeed, Defendant was under supervision when he allegedly committed the current offense, a factor specifically noted as a relevant consideration by § 3142(g)(3)(B).   Defendant has consistently demonstrated a lack of respect for any court order, and the fact that his brother may suffer financial penalties if he violates the conditions of release does not change the Court's assessment.  Defendant's history certainly does not support a conclusion that he is motivated to avoid harm to his loved ones.

The Court also notes that Defendant conceded during the appearance before the undersigned that he is not claiming that he suffers from a medical condition that places him at increased risk from COVID-19—in other words, Defendant carries the sickle cell trait but he does not suffer from sickle cell anemia.  Defendant is also only 42 years old.  (*See* Dkt. 41 at 1).

### D.   <u>Nature and Seriousness of the Danger</u>

The record before the Court demonstrates that Defendant has a long history of drug trafficking, and the charged offense involves lethal drugs that are wreaking havoc

- 11 -

throughout the community.  Given Defendant's prior history of violating court orders and conditions of supervision, the nature and seriousness of the danger he poses if released is high.

### E.   <u>Summary</u>

Consideration of all of the § 3142(g) factors favors detention.  In addition, Defendant has not rebutted the presumptions in favor of detention.  He first presented evidence that his father would allow him to live with him, but that proposal quickly evaporated, so that he now is latching on to the grandmother of some of his children, but it is still unclear whether she would even be able to allow Defendant to live with her. Moreover, while Defendant's brother's loyalty and dedication to his brother is admirable, Defendant's history contradicts any conclusion that the potential financial harm to his brother would deter Defendant.  Defendant is facing a significant term of incarceration if convicted—much higher than any prison sentence he has served to date—and the weight of the evidence against Defendant is strong.  The crimes that Defendant is alleged to have committed represent dangerous activity, and Defendant's criminal history similarly reflects dangerous activity and an unwillingness to abide by conditions of release.  As a result, the Court finds that the Government has clearly and convincingly demonstrated that Defendant's release would pose an unacceptable risk of danger and that the preponderance of the evidence demonstrates that Defendant presents a risk of flight—and no condition or combination of conditions could protect against either one of those risks.

IV.    **<u>CONCLUSION</u>**

For the foregoing reasons, the Government's motion to revoke the magistrate judge's order of release (Dkt. 32) is granted, and Defendant is ordered detained pending trial consistent with the initial Order of Detention (Dkt. 6).

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  June 17, 2020
        Rochester, New York